Frank et, Plaintiffs-Appellants, *v.* Flynn, Defendant-Appellee.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26645.   Decided April 9, 1964.

34

*Messrs. Rocker, Kahn, Kleinman, Yanowitz Annan & Zaller*, for plaintiffs-appellants.
*Mr. Thomas M. Callaghan*, for defendant-appellee.

Kovachy, P. J. This is an appeal on questions of law from a judgment entered in favor of the defendant at the close of plaintiffs' case in the Cleveland Municipal Court.

On June 15, 1959, defendant, James G. Flynn, entered into a written agreement with James Dworkin to rent premises located at 2626 Wooster Road, Rocky River, Ohio. He took possession of said property on or about the same date.

On September 10, 1959, plaintiffs, Morton Frank and Wilbur Bailis, became owners of the premises and on the same day were assigned said written agreement.

Defendant continued in the possession of the premises and paid the required rental therefor until September 14, 1961, at which time he vacated the property after having advised plaintiffs by letter of his intention so to do.

The provision of the agreement vital to the determination of the rights of parties is contained in Section 5, which reads as follows:

"5. The within premises are hereby rented for a period of 12 months, commencing June 15, 1959, and this agreement shall automatically renew itself thereafter, meaning continuously for like periods, unless tenant shall give to the landlord not less than thirty days' written notice, prior to the expiration of the term then running, of tenant's intention to terminate said tenancy at the expiration of the then existing term, or unless

the landlord shall legally notify tenant to vacate the within premises, or unless the landlord notify the tenant, by registered mail, of any change in the monthly rental or any other terms of the within agreement.''

The trial court sustained defendant's motion for judgment in his favor on the authority of *Hallock* v. *Kintzler*, 142 Ohio St., 287, 51 N. E. (2d), 905, the syllabus of which reads:

''1. Perpetual leases are not favored by the law and an intention to create such a perpetuity must be clearly shown.

''2. A lease will not be construed to create a right to perpetual renewal unless the language employed clearly indicates that it was the intention of the parties so to do.

''3. Such an intention is not clearly shown by a lease for the term of one year at a total rental of $420 with a general option for renewal from year to year.

''4. Such a lease fixes the length of the renewal period and gives the lessee the right to one such renewal.''

The renewal period in the lease in the instant case is ''a period of 12 months.'' The defendant was in possession of the premises for one renewal period plus three months and had paid the rent due for such length of time.

Since the trial court ''concluded that the *Hallock case* (*supra*) was determinative of the issues'' before it, it must have found that the language of Section 5 did not create a right to a perpetual renewal of the ''period of 12 months'' and the right to only one renewal of the ''period of 12 months'' obtained under the lease.

Plaintiffs' assignment of error is that the trial court erred in sustaining defendant's motion for judgment at the close of plaintiffs' case in chief and in failing to sustain plaintiffs' motion for a new trial.

Perpetual leases are not favored by the law, but where the language employed clearly indicates the intention of the parties to create a right to perpetual renewal, the courts will uphold the same as a subsisting and valid lease. It is only where, by reason of ambiguous or equivocal language, a doubt exists as to the intention of the parties to create the right to perpetual renewal that the courts construe the instrument as merely fixing the length of the renewal period and the right to one such renewal.

A careful reading of Section 5 of this agreement discloses a clear intention by the parties to keep renewing "a period of 12 months" *automatically*, "meaning continuously for like periods," as long as the tenant does not give a "thirty days written notice, prior to the expiration of the term then running, of tenant's intention to terminate said tenancy at the expiration of the then existing term," or unless the landlord gives a legal notice to vacate or a notice, by registered mail, of any change made in rental or other term in the agreement. "Automatically" means, "in an automatic manner," and "automatic" means, "1. done without conscious thought or volition, * * *." (Webster's New World Dictionary)

It is our view that the language of Section 5 signifies a clear understanding between the parties that the premises be occupied by the tenant year in and year out on the terms set forth in the lease without further thought or act on the part of the tenant or the landlord unless terminated by an affirmative act in the manner provided therein and that, by reason thereof, this lease creates a right of perpetual renewal which, under the law, constitutes it a perpetual lease.

The second paragraph of the syllabus in *President and Trustees of the Ohio University* v. *The Athens Livestock Sales, Inc.*, 115 Ohio App., 21, 179 N. E. (2d), 382, states the following:

"2. A lease for three years until a certain date, 'and thereafter on a year to year basis until terminated by the lessees by one month's notice in writing to the lessors thirty days prior to' such date 'or any succeeding year,' confers upon the lessee the right to perpetual renewal, so long as the terms thereof are complied with."

In 32 American Jurisprudence, 812, Landlord and Tenant, Section 967, part of said section reads as follows:

"Although there is some contrary authority, the generally accepted view is that a provision clearly giving the lessee and his assigns the right to perpetual renewals is valid in the absence of some statutory prohibition, and will be enforced by the courts, although such a provision in a lease is not favored by the courts and a lease will be construed as not making such a provision unless it does so clearly. It has been generally held that a provision in a lease for perpetual renewal is not violative either of the rule against perpetuities or of statutes limiting

the period during which the absolute power of alienation may be suspended. * * *"

and part of Section 969 reads as follows:

"* * * A covenant, in a lease for a term of years, to renew it at its expiration for another term of the same duration 'with a like covenant for future renewals of the lease as is contained in this indenture,' a covenant to renew at any time when requested or a covenant to renew 'from time to time,' is a covenant for a perpetual renewal, and the same effect has been given a provision that the lessee is to have and to hold the demised premises 'for and during the term of five years or as much longer thereafter as the parties of the second part may elect to pay the parties of the first part a certain sum per annum to be paid semiannually in advance.' * * *"

See 33 Ohio Jurisprudence (2d), 753, Landlord and Tenant, Section 501.

The lease here under consideration was signed by James G. Flynn as tenant and James Dworkin as landlord and was not attested or acknowledged.

Defendant contends that if this agreement be a perpetual lease, it then is one in excess of three years and in accordance with *Chapter 5301, Revised Code*, is required to be acknowledged by the lessor in the presence of two witnesses "who shall attest the signing and subscribe their names * * *," and also be acknowledged before a notary public or other named functionary "who shall certify the acknowledgment and subscribe his name * * *" and that since this was not done the lease is invalid and unenforceable.

Defendant is right in this contention that this lease, under the law, required attestation and acknowledgment.

In *The People's Building, Loan and Savings Co.* v. *McIntire, et al.*, 14 Ohio App., 28, the syllabus reads:

"1. A lease of real property for a term of one year with an option of renewal for four consecutive years is an interest in real property within the purview of Section 8510, General Code (Section 5301.01, Revised Code), requiring acknowledgment and attestation."

See *Gelman* v. *Holland Furnace Co.*, 59 Ohio Law Abs., 539, 92 N. E. (2d), 704.

However, it is also the law that while a lease in excess of

three years that is not attested and acknowledged is void, the lessee in possession thereunder is, nevertheless, a tenant from year to year at the will of the lessor and subject to all the provisions of the lease excepting duration.

The defendant tenant here started a third "period of 12 months" on June 15, 1961, when he continued in possession of the premises without giving the plaintiffs landlords written notice thirty days prior to the expiration of the term, then running, of an intention to terminate his tenancy at the expiration of the then existing term as provided in the lease and by reason thereof made himself liable for the payment of rental until the end of the "period of 12 months," namely: June 14, 1962.

The Supreme Court in *Baltimore & Ohio Railroad Co.* v. *West*, 57 Ohio St., 161, 49 N. E., 344, stated the law in the syllabus as follows:

"1. An entry under a lease for a term of years at an annual rent, void for any cause, and payment of rent under it, creates a tenancy from year to year upon the terms of the lease, except as to its duration.

"2. Where, after the expiration of the term, the tenant holds over and pays rent for a part of another year, without any new agreement with the landlord, he becomes a tenant for that year at the same rent, and cannot terminate the tenancy before the end of the year without the landlord's consent.

"3. The obligation of the tenant to pay the rent for the year, in such case, is not within the statute of frauds; the holding over being equivalent to a new entry."

Defendant's further contention that the lease is incomplete as a contract because the wife of the tenant did not sign is not well taken for the reason that the document itself states that it is an agreement "by and between James Dworkin, landlord, and James G. Flynn, tenant."

We hold, accordingly, that the plaintiffs stated a good cause of action in their amended petition against the defendant for damages due them as rental from September 15, 1961, to June 14, 1962, and that the trial court erred in rendering judgment for the defendant at the close of plaintiffs' case and is not granting plaintiffs' motion for a new trial. The judgment,

therefore, is reversed as contrary to law and the cause remanded for further proceedings according to law.

Judgment reversed.

Exceptions. Order see journal.

CORRIGAN and WASSERMAN, JJ., concur.